UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| REGENCY HOSPITAL OF CINCINNATI, | Case No. 1:07-cv-800 |
| Plaintiff, | Magistrate Judge Timothy S. Black |
| vs. | |
| BLUE CROSS BLUE SHIELD OF TENNESSEE, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff Regency Hospital of Cincinnati ("Regency") initiated this civil action on August 28, 2007 by filing a complaint in the Hamilton County Court of Common Pleas against Blue Cross Blue Shield Of Tennessee ("Blue Cross") alleging breach of an implied contract and estoppel under Ohio law. Blue Cross removed this civil action to this Court on September 27, 2007 (Doc. 1), and filed a counterclaim for fees and costs alleging that Regency knew or should have known that its state law claims under estoppel and breach of contract are preempted by the federal law of ERISA (Doc. 5). The parties have consented to disposition by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 13.)

The case is now before the Court on Defendant Blue Cross' Motion for Summary Judgment on All Claims (Doc. 32) and the parties' responsive memoranda (Docs. 36, 39).

# I. FACTUAL BACKGROUND

Regency is an Ohio corporation that provides long term acute care hospital services. Regency provided services to Patricia Fogelson from August 23 to August 27, 2005, and again from September 3 to October 7, 2005. During this time, Fogelson was insured under a health plan issued by Blue Cross to Fogelson's employer.

On August 22, 2005, before Fogelson was admitted to Regency, Regency telephoned Blue Cross to verify Fogelson's coverage and to pre-certify her treatment. Regency alleges that a Blue Cross representative confirmed Fogelson's eligibility. On September 9, 2005, Regency again called Blue Cross to verify Fogelson's coverage, and Regency alleges that Blue Cross again confirmed Fogelson's eligibility. Relying on this information, Regency provided services to Fogelson "without arranging alternate payment provisions from her."

Although Regency submitted bills to Blue Cross for payment, Regency alleges that that Blue Cross did not pay Regency's bills in accordance with the telephone calls. The total cost for both admissions was $234,276.88, for which amount Regency subsequently submitted claims to Blue Cross for payment. Blue Cross paid $5,856.48 toward the costs of the first admission and $19,143.98 toward costs of the second admission.

Regency alleges that Blue Cross is estopped from denying payment after its agents and representatives allegedly confirmed Fogelson's coverage and allegedly stated that the claims would be paid. Regency also alleges that Blue Cross agreed to pay Regency for the services rendered to Fogelson and has breached its agreement to do so.

Blue Cross maintains, however, that Regency's state law claims are pre-empted by the federal ERISA statutes, and, under ERISA, Regency cannot assert a breach of contract claim and has not pled a cognizable claim for equitable estoppel. Nevertheless and moreover, Blue Cross further maintains that it properly paid Regency pursuant to the terms of the Plan, which outcome, *i.e.*, proper payment under the terms of the Plan, is the only relief available here under ERISA anyway, and it has been effected.

## II. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). Nevertheless, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

# III. ANALYSIS

Blue Cross maintains that it is entitled to summary judgment on Regency's two claims, equitable estoppel and breach of contract, because they are state law claims which are pre-empted by the federal ERISA statutes, and that under ERISA, Regency cannot state a breach of contract claim and has not pled a cognizable claim for equitable estoppel. Blue Cross further maintains that there is no genuine issue of material fact in dispute regarding Blue Cross's having properly paid Regency under the terms of the Plan, and, therefore, Regency's claims fail to survive entry of summary judgment against them.

The Court agrees, and for the reasons that follow, finds that Blue Cross' motion for summary judgment is well-taken.

### A. *Regency's claims are pre-empted by ERISA*

Blue Cross asserts that it is entitled to summary judgment on Regency's two claims (equitable estoppel and breach of contract) because they are state law claims pre-empted by the federal ERISA statutes as set forth in the case law of the Sixth Circuit and United States Supreme Court.

To avoid preemption by ERISA, Regency Hospital argues that it did <u>not</u> bring its claims seeking to enforce the terms and conditions of any health benefit plan. Instead, Regency seeks recovery of its damages for detrimental reliance based upon the words and actions of Blue Cross.

Regency maintains that "ERISA does not preempt state law when the state law claim is brought by an independent, third-party health care provider (such as a hospital) against an insurer for its negligent misrepresentation regarding the existence of health care coverage." *See Miami Valley Hospital v. Community Ins*. Co., 2006 WL 2252669 *7 (S.D. Ohio, August 7, 2006) (Rose, J.) (quoting *Transitional Hosps. Corp. v. Blue Cross & Blue Shield of Tex., Inc*., 164 F.3d 952, 954 (5th Cir. 1999)).

However, *Transitional Hospital* also held that "a hospital's state-law claims for breach of fiduciary duty, negligence, <u>equitable estoppel, breach of contract</u> and fraud <u>are preempted by ERISA</u> when the hospital seeks to recover benefits owed under the plan to a plan participant who has assigned her rights to benefits to the hospital." *See Transitional Hosps.,* 164 F.3d at 954 (*emphasis added*).

Moreover, the Sixth Circuit has also held that ERISA preempts such estoppel and breach of contract claims. In *Cromwell v. Equicor-Equitable HCA Corp*., 944 F.2d 1272 (6th Cir. 1991), the Sixth Circuit stated that "ERISA preempts state law and state law claims that "relate to" any employee benefit plan as that term is defined therein." *Cromwell,* 944 F.2d at 1275 (citing 29 U.S.C. Sec. 1 144(a) and *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)). As such, the Sixth Circuit has specifically stated that equitable estoppel and promissory estoppel are expressly preempted. *Cromwell*, 944 F.2d at 1276.[1]

---

[1] Citing *Daniel v. Eaton Corp*, supra; *Davis v. Kentucky Finance Cas. Retirement Plan*, 887 F.2d 689 (6th Cir. 1989); *Tassinare v. American Nat. Ins. Co.*, 32 F.3d 220, 224 (6th Cir. 1994)

Here, Regency alleges that on August 22, 2005, a representative from Regency telephoned Blue Cross to verify insurance coverage available to Fogelson and to pre-certify the admission. Based on Regency's finding of "insurance coverage available," Regency admitted Ms. Fogelson to its care. Thus, there is no dispute that the insurance coverage Regency sought to verify was available pursuant to an employer health care plan, subject to ERISA. Thus, the calls of Regency to Blue Cross were "related to" an ERISA plan, and the ensuing estoppel and/or contract claims are also "related to" that Plan.

Under the express language of the United States Court of Appeals for the Sixth Circuit, Regency's state law claims "relate to" an ERISA plan and are therefore preempted by ERISA. *Cromwell*, 944 F.2d at 1275-76; *see also Pilot Life Ins. Co.*, 481 U. S. at 41. Accordingly, Plaintiff's state law claims must be dismissed.

B.  *Regency has not pled an ERISA-based equitable estoppel claim*

Regency asserts that even if its state law claims are preempted by ERISA, it can still maintain an estoppel claim under ERISA. *See, e.g., Bond v. Gen. Motors Acceptance Corp.*, No. 96-3945, 1998 U.S. App. LEXIS 1868 (6th Cir. Feb. 5, 1998) (federal common law of equitable or promissory estoppel can be applied to enforce payments under an ERISA health plan.) Regency asserts that an equitable estoppel claim under ERISA is especially appropriate when one party is damaged due to its detrimental reliance upon the representations of an agent of the other party. *Id.* at *11 (citing *Armistead v. Vernitron Corp.*, 944 F.2d 1287 (6th Cir. 1991)).

Blue Cross maintains, however, that Regency's argument is misplaced, as it cannot prove estoppel in any event, noting that equitable estoppel under ERISA is designed to enforce ERISA and the agreements made under it. *See Armisteadv. Vernitron*, 944 F.2d 1287, 1298 (6th Cir. 1991). The Court agrees.

The elements of an equitable estoppel claim under ERISA are: (1) a representation of fact made with gross negligence or fraudulent intent; (2) made by a party aware of the true facts; (3) intended to induce reliance or reasonably believed to be so intended; where the party asserting the estoppel is (4) unaware of the true facts; and (5) reasonably or justifiably relies on the representation to his detriment. *Trustees of the Mich. Labors' Health Care Fund v. Gibbons*, 209 F.3d 587, 591 (6th Cir. 2007).

However, equitable estoppel under ERISA is not available to override the clear terms of plan documents. *Sprague v. General Motors Corp.*, 133 F.3d 388, 404 (6th Cir. 1998) (*en banc*). "(A)lthough equitable estoppel may a viable theory in ERISA cases, principles of estoppel cannot be applied to vary the terms of unambiguous plan documents; estoppel can only be invoked in the context of ambiguous plan provisions." *Putney v. Medical Mutual of Ohio*, 111 Fed. Appx. 803, 807 (6th Cir. 2004) (citing *Sprague*, 133 F.3d at 404). "Consequently, a claimant must plead plan ambiguity in this Circuit to state a claim for estoppel relative to an ERISA claim for benefits." *Marks v. Newcourt Credit Group, Inc.*, 342 F.3d 444, 456 (6th Cir. 2003).

In *Sprague*, the Sixth Circuit rejected the notion that an employer was estopped from enforcing Plan language because it had misrepresented the Plan's terms. *Sprague*, 133 F.3d at 404. The Court of Appeals reasoned that a party's reliance can seldom if ever be reasonable if it is inconsistent with the unambiguous terms of plan documents. *Id.* "To allow estoppel to override the clear terms of plan documents would be to enforce something other than those documents." *Bertram v. Nutone, Inc*., 107 F.Supp.2d 957, 968 (S.D. Ohio 2000) (citing *Sprague*, 133 F.3d at 404).

Here, Regency does not assert that Plan language was ambiguous, nor that equitable estoppel should apply to assist with the interpretation of the Plan language. Thus, absent some pleading that the Plan language itself is ambiguous and requires interpretation, the Court finds that Regency fails to plead a threshold element of ERISA-based equitable estoppel.

C.  *Blue Cross properly paid Regency under the terms of the Plan*

There is no genuine issue of material fact in dispute as to whether or not Blue Cross properly paid Regency under the terms of the Plan.

Blue Cross authorized Ms. Fogelson's admission to Regency only after a doctor to doctor conference was held with the patient's treating physician and one of Blue Cross's medical directors. (*See* Doc. 32, Exhibit B, Affdavit of Pam Brannon at para. 1).

Regency agreed to accept the patient with payment for services based on Out-of-Network rates, which Regency was properly told would be 60% of the Maximum Allowable Charge ("MAC"), subject to a maximum lifetime benefit of $l,000,000. (*See* Doc. 32, Exhibit B, Affidavit of Pam Brannon at para. 1).

According to the express language of the Plan, "Billed charges ["the amount a Provider charges for services rendered"] may be different from the amount that [Blue Cross] determines to be the Maximum Allowable Charge for services." (Doc. 32, Ex. A, BCBST 000033). "Maximum Allowable Charge" ("MAC") is defined as "The amount that the Plan, at its sole discretion, has determined to be the maximum amount payable for a Covered Service. That determination will be based upon Blue Cross's contract with a Network Provider or the amount payable based on the administrator's fee schedule for the Covered Services rendered by Out-of- Network Providers." (Doc 32, Ex. A, BCBST 000036). Thus, the amount charged by Regency is not the same as the amount that would be paid by Blue Cross under the Plan.

Resolution of this case is eased considerably due to the existence of a tape recording of the conversation between the parties where Blue Cross's representations about coverage are expressly memorialized. The recording eliminates any genuine issue of material fact. And the tape recording entirely disproves Regency's claims and affirms Blue Cross's defense.

As the recording of the conversation between Blue Cross and Regency reflects,

Regency asked if it would receive "usual and customary rates," *i.e.,* "UCR" rates, and, in response, Blue Cross expressly told Regency that "the Plan pays Maximum Allowable Charge rates." (Doc. 32, Recording dated August 22, 2005, attached as Exhibit C). In that same call, Blue Cross also expressly told Regency that there was a maximum lifetime benefit of $ 1,000,000. (*Id.*).

Ms. Fogelson had two dates of admission at Regency: August 23,2005 to August 27, 2005, and September 3, 2005 to October 7, 2005. Regency sent a bill of $29,078.81 for the first admission, and a bill of $ 213,648.07 for the second admission. (*See* Doc. 32, Exhibit B, Affidavit of Pam Brannon at para. 2).

On the first bill of $29,078.81, $23,022.33 was disallowed for inclusion within the Maximum Allowable Charge because, pursuant to the Plan, the charge exceeded the Diagnosis Related Grouping Rate. This disallowance left an allowed amount of $6,056.48. After deducting Ms. Fogelson's $200 co-pay, Blue Cross properly paid 100% of the $5,856.48 balance. (*See* Doc. 32, Exhibit B, Affidavit of Pam Brannon at para. 3).

On the second bill of $213,648.07, $190,401.69 was disallowed for inclusion within the Maximum Allowable Charge because, pursuant to the Plan, the charge exceeded the Diagnosis Related Grouping Rate. This disallowance left an allowed amount of $23,246.38. After deducting Ms. Fogelson's $200 co-pay, and $3,902.40 in co-insurance,[2] Blue Cross properly paid 100% of the $19.143.98 balance.

---

[2] **The co-insurance was incurred because the maximum lifetime benefits of $1,000,000 had already been provided in coverage.** (See Doc. 32, Exhibit B, Affidavit of Pam Brannon at para. 4).

Thus, when all the analysis is done, the fundamental truth exists that Regency was told of the $1,000,000 maximum lifetime benefit and that benefits ceased only after Blue Cross had paid up to that $1,000,000 maximum lifetime benefit. There is no genuine issue of material fact in dispute.

## IV. CONCLUSION

Accordingly, based on the foregoing, Plaintiff's claims against Blue Cross must fail. Because no genuine issues of material fact exist, and as Blue Cross is entitled to judgment as a matter of law, Blue Cross's Motion for Summary Judgment is hereby **GRANTED** as to all claims brought against Blue Cross.[3]

**IT IS SO ORDERED.**


Date: May 1, 2009
    s/Timothy S. Black
Timothy S. Black
United States Magistrate Judge

---

[3] Defendant's motion for summary judgment seeks judgment "on all claims." Therefore, Blue Cross's counterclaim is before the Court as to summary judgment. The material facts as to the counterclaim are not in dispute, and under them, Blue Cross is not entitled to judgment as a matter of law, the Court finding that Plaintiff's filing of its lawsuit in state court and its continued prosecution in this Court was not frivolous.